**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CONSTANCE AGEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:03-cv-01720-JEO |
| | ) | |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Constance Agee (hereinafter "the plaintiff") filed this action asserting various claims against John E. Potter as Postmaster General (hereinafter "the defendant") under Title VII of the Civil Rights Act of 1964.  Specifically, the plaintiff alleges that the defendant discriminated against her "because of sexual harassment – hostile work environment and quid pro quo and retaliation in violation of Title VII of the 'Civil Rights Act of 1964.'"  (First Amended Complaint  (Doc. 17)).[1]  The defendant has filed a motion for summary judgment on all of the plaintiff's claims.  (Doc. 22).  In support of his motion, the defendant filed a memorandum of law (hereinafter "Defendant's Memorandum") and evidentiary materials.  (Doc. 23 & 24).  The plaintiff filed a brief in opposition to the defendant's motion (hereinafter "Opposition Brief").  (Doc. 26).  The defendant thereafter filed a reply brief (hereinafter "Reply").  (Doc. 27).  Upon consideration, the court finds that the defendant's motion for summary judgment is due to be granted.

---

[1] References to "Doc.___" are to the documents as numbered by the clerk of the court's record of the case.

**FACTUAL HISTORY**[2]

The plaintiff began working for the United States Postal Service in 1984.  (Attachment 1).[3]  On November 6, 1998, the plaintiff filed an Equal Employment Opportunity complaint alleging sexual harassment involving her supervisors, Richard Reese and Carlton Patterson, and a clerk, Karen Marsh.  (*Id*. at p. 5).  During this time, the plaintiff was employed as a clerk at the Fairview Station in Birmingham, Alabama.  (Attachment 10).  The claim was cataloged by Postal officials as Agency Case Number 4-H-350-0060-99.  (Attachment 5).  The plaintiff withdrew this complaint on March 5, 1999, by signing Postal Service Form 2564-C, which included a provision stating that by withdrawing her complaint she waived her right to any further appeal of the allegations contained therein and she further certified that the withdrawal was not the result of threats, coercion, intimidation, promises, or other inducements.  (Attachment 6).

On September 19, 2001, the plaintiff contacted the EEOC and requested that her previous compliant (4-H-350-0060-99) be reinstated.  The request was denied and the plaintiff appealed.  On April 2, 2003, the EEOC dismissed the plaintiff's appeal premised on a finding that she validly waived her rights.  (Attachment 2).

On September 19, 2001, the plaintiff filed two new complaints with the Agency.  In her first complaint (Agency Case No. 4-H-350-0004-02), the plaintiff alleged that she was retaliated against when her supervisor, Carlton Patterson, shouted at her in a "dehumanizing manner" on August 1, 2001, in a meeting with the clerks and again when he spoke to her with an "elevated

---

[2]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff.  They are the "'facts' for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)."  *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[3]Unless noted otherwise, the "Attachments" are located at document 24, exhibit A.

voice" on August 8, 2001, when she went into his office to discuss deposit procedures. (Attachment 10).  In the second complaint (Agency Case No. 4-H-350-0010-02), the plaintiff alleged that she was sexually discriminated against and retaliated against when Karen Marsh, a co-worker, assaulted her and her supervisor (Patterson) did not intervene.  (Attachment 11).  The plaintiff contends that Karen Marsh physically assaulted her by deliberately walking into her cash drawer using her left arm to cause the drawer to be pushed into the plaintiff's abdominal area. (Attachment 13 at p. 2).

On October 19, 2001, the plaintiff completed an "Information for Precomplaint Counseling" form (Agency Case No. 4-H-350-0031-02), alleging that Patterson threatened and harassed her.  (Attachment 8 & 12).  Specifically, Patterson is alleged to have threatened the plaintiff by stating, "I know what I'm gonna [sic] do for you now.  I'm gonna [sic] take care of you." (*Id*.).  The plaintiff's September and October complaints, all of which were against Patterson, were consolidated into Agency Case Number 4-H-350-0004-02.  (Attachment 7 & 8). The plaintiff was granted a hearing on February 27, 2003, before an Administrative Law Judge on the matter (4-H-350-0004-02).  (First Amended Complaint at p. 3).  On April 1, 2003, the Administrative Law Judge found there was no discrimination.  (Attachment 1 at p. 5). Specifically, Judge Jill Lolley Vincent found that the plaintiff admitted that the conduct "had stopped prior to the time period in issue in this proceeding" and, therefore, "the Agency did not discriminate against the Complainant based on sexual harassment."  (*Id*. at p. 13).  She further found that there was not "a causal connection between the alleged harassment and the prior EEO complaint." (*Id*.).

Subsequently, the plaintiff filed the instant action within 90 days of receiving the

3

Administrative Judge's decision.  (First Amended Complaint at p. 3).

On October 16, 2001, the plaintiff filed an additional complaint (Agency Case No. 4-H-350-0032-02), which was not consolidated with the other three (4-H-350-0004-02).  In this complaint, the plaintiff alleged that she was sexually harassed on "March 3, 1999, 2000, and up to August 29, 2001" when "management made sexual jokes/comments about a relationship she had with a co-worker."  (Attachment 14 & 15).  On June 20, 2002, the Postal Service issued a Final Agency Decision on this claim, finding the complaint to be untimely and advising the plaintiff that she may appeal the decision to the EEOC within 30 days or file a judicial complaint in federal court within 90 days.  (Attachment 15).  The plaintiff did not file an appeal with the EEOC until November 25, 2002.  The EEOC rejected the appeal as untimely.  (Attachment 2).

The plaintiff makes several allegations in the instant complaint that she did not make in her EEOC complaints and that relate to conduct occurring before the relevant period. Specifically, the plaintiff asserts that Robert Reese, her previous manager, made daily comments on the plaintiff's appearance, rubbed the plaintiff's back and arms, and repeatedly asked the plaintiff about personal relationships (First Amended Complaint at p. 5); that Reese, a married man, asked the plaintiff on numerous occasions if she was interested in dating married men (*id.*); and, that she asked Reese to cease his conduct.  (*Id.*).  The plaintiff also alleges that she was required to use a special box machine in her job and the machine was located in Reese's office. While using the machine, Reese constantly stared at the plaintiff in a sexual nature and he would frequently rub the plaintiff's back while she was sitting at the box machine.[4]  (*Id.*).  The plaintiff

---

[4]Judge Vincent referenced Reese's conduct in her "Decision."  (Ex. 1 at pp. 5-6).  She described the events as "background information" that was outside the relevant period.  (*Id.*).

further alleges that Patterson made sexual gestures towards her - specifically, Patterson used his thumb and index finger of one hand to make an "O" and insert the index finger of the other hand into the "O," simulating a sexual act.[5]  (*Id*. at p. 6).

## PROCEDURAL HISTORY

The plaintiff filed her complaint with this court on July 3, 2003, and named John E. Potter, Postmaster General; Robert Reese; Carlton Patterson; and Karen Marsh as defendants. (Doc. 1).  The plaintiff asserted claims of sexual harassment and retaliation under Title VII; intentional infliction of emotional distress, negligent hiring, training, supervision, and retention; and, assault and battery under § 1981.  (Doc. 1).  The defendants moved for substitution of the United States of America as defendant and for dismissal or, in the alternative, for summary judgment on plaintiff's tort claims and claims under 42 U.S.C. § 1981.  (Doc. 4 & 5).  In support of his motion to dismiss, the defendants offered a memorandum of law as well as evidentiary materials.  (Doc. 6 & 7).  The plaintiff filed a response to the defendant's motion to dismiss and the defendant filed a reply.  (Doc. 9 &10).  The defendant also filed supplemental evidentiary materials in support of the motion to dismiss.  (Doc. 11).  The court held a hearing on the defendant's motion on April 21, 2004.  At that hearing, both parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636.  (Doc. 15).  Also at that hearing, the court allowed the United States of America to be substituted as defendant, thereby dismissing Robert Reese, Carlton Patterson, and Karen Marsh (doc. 16), and ordered the § 1981 and the common law tort claims dismissed, thereby granting the defendant's motion for partial summary

---

[5]This event does not appear to have been presented at all in the prior administrative proceedings.  (See Ex. 1 at pp. 5-12).

judgment.  The plaintiff was granted leave to amend her complaint.  (*Id.*).

The plaintiff filed her amended complaint on May 28, 2004.  (Doc. 17).  After answering the plaintiff's complaint, the defendant filed his motion for summary judgment (doc. 22) and a memorandum in support thereof as well as evidentiary materials (doc. 23 & 24).  The plaintiff filed her Opposition Brief (doc. 26) and the defendant filed a Reply (doc. 27).

## DISCUSSION

### Summary Judgment Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b).  Once the moving party has met her burden, Rule 56(e)

6

"requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not be present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id*.

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## Analysis of the Claims

### Sexual Harassment/Sexual Discrimination

The plaintiff asserts hostile work environment and what was formerly known as "*quid pro quo*" sexual harassment claims premised on the complaints previously identified as 4-H-350-0060-99, 4-H-350-0032-02, and 4-H-350-0004-02. The defendant contends that summary judgment is due to be granted on the claims initially presented in 4-H-350-0060-99 and 4-H-350-0032-02 due to the plaintiff's failure to exhaust her administrative remedies prior to filing her complaint in this court. (Doc. 23). The defendant further contends that summary judgment is due to be granted with regard to the issues presented in complaint 4-H-350-0004-02 because, while properly exhausted, the issues raised in that complaint do not amount to a claim

of sexual harassment.  (*Id*.).

### Cases 4-H-350-0060-99 and 4-H-350-0032-02

As just stated, the defendant initially contends that summary judgment is due to be

granted on the claims presented in cases 4-H-350-0060-99 and 4-H-350-0032-02 due to the

plaintiff's failure to exhaust available administrative remedies prior to filing this matter.  (Doc.

23).  The plaintiff did not address this defense in her response.  (See Doc. 26).  Accordingly, the

first issue is whether the plaintiff has abandoned the claims found in cases 4-H-350-0060-99 and

4-H-350-0032-02 by her failure to respond or is she otherwise precluded from proceeding on

these claims.

The FEDERAL RULES OF CIVIL PROCEDURE state that when a motion for summary

judgment is made and properly supported, "an adverse party. . . must set forth specific facts

showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  The law is clear that in

opposing a motion for summary judgment, a party simply may not rely on his pleadings to avoid

judgment against him.  *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.

1995).  Grounds alleged in the complaint but not relied upon in summary judgment are deemed

abandoned.  *Id.; see also Bute v. Schuller Int'l, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)

("Because plaintiff has failed to respond to this argument or otherwise address this claim, the

Court deems it abandoned.").[6]  Conclusory allegations and conjecture cannot be the basis for

---

[6]Chief United States District Judge Granade recently stated:

In her response brief, plaintiff only addressed her claim of retaliation.  The court notes that courts
commonly grant summary judgment as to claims which the plaintiff failed to address in response to a
summary judgment motion.  *See, e.g., Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001);
*Boex v. OFS Fitel, LLC*, 339 F. Supp. 2d 1352, 1371 (N.D. Ga. 2004).  "In opposing a motion for summary
judgment, a 'party may not rely on his pleadings to avoid judgment against him.'"  *Resolution Trust Corp. v.
Dunmar Corp*., 43 F.3d 587, 592 (11th Cir. 1995), *cert. denied sub nom., Jones v. Resolution Trust Corp*.,
516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995) (citing *Ryan v. Int'l Union of Operating Eng's., Local*

denial of summary judgment. *Langlois v. City of Deerfield Beach,* 370 F. Supp. 2d 1233 (S.D. Fla. 2005) (citing *Mayfield v. Patterson Pump Co*., 101 F.3d 1371, 1376 (11th Cir. 1996)).

In her amended complaint, the plaintiff asserts claims relating to conduct which was the subject matter of all three EEO complaints - although only 4-H-350-0060-99 was referenced by its agency number. (Doc. 17). As stated above, the defendant has moved for summary judgment as to the allegations contained in cases 4-H-350-0060-99 and 4-H-350-0004-02, on the basis that these claims were not properly exhausted. (Doc. 23). In her response to the defendant's motion for summary judgment, the plaintiff merely reiterates the claims that were made in her amended pleading, and does not respond directly to the defendant's assertion. Because the plaintiff has failed to respond to the defendant's argument, the court deems the plaintiff's claim abandoned as provided in *Resolution Trust*, and finds the defendant's motion for summary judgment in regard to the conduct covered by the allegations in 4-H-350-0060-99 and 4-H-350-0032-02 is due to be granted.

### Failure to Exhaust Administrative Remedies

Even had the plaintiff not abandoned the foregoing claims, this court would still find that the defendant's motion for summary judgment is due to be granted premised on the plaintiff's failure to exhaust her administrative remedies prior to filing suit.

Title VII requires exhustion of all administrative processes as a condition precedent to

---

*675*, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* at 599 (citations omitted). The court deems plaintiff's claims of racial discrimination to be abandoned, *see id.*, and defendant's motion for summary judgment as to plaintiff's claims of racial discrimination is due to be granted.

*Barnes v. Crowne Investments, Inc.*, 391 F. Supp. 2d 1108 (S.D. Ala. 2005).

suit in Federal Court.  *Brown v. GSA*, 425 U.S. 820, 832-34, 96 S. Ct. 1961, 48 L. Ed. 2d 402

(1976).  Failure to exhaust administrative remedies against a federal agency is fatal to a Title VII

claim by an executive branch employee.  *Id*.  The Eleventh Circuit specifically has held that a

federal employee must pursue and exhaust her administrative remedies as a jurisdictional

prerequisite to filing a Title VII action.  *Crawford v. Babbit,* 186 F.3d 1322, 1326 (11th Cir.

1999).  Similarly, the failure to file a timely appeal of an adverse agency decision with the EEOC

has been held to be a bar to relief in Federal court under a failure to exhaust administrative

remedies defense.  *Quintana v. Bergland*, 1980 U.S. Dist. LEXIS 14589, 23 FEP 1489, 1490-91

(D.N.M. 1980).

Case 4-H-350-0060-99, which the plaintiff originally filed on November 6, 1998, was

withdrawn on March 5, 1999.  (Attachment 6).  On September 19, 2001, while filing another

complaint, the plaintiff requested that her earlier withdrawal be rescinded and the complaint

reinstated due to the fact that she was under duress when she signed the withdrawal form.

(Attachment 9).  This request was denied, and she appealed that decision to the EEOC.  On April

3, 2003, an administrative law judge found that she had voluntarily dismissed the complaint and

dismissed the appeal.  (Attachment 2).  In the amended complaint, the plaintiff alleges sexual

harassment by her supervisors.

The defendant argues that summary judgment is proper on these claims because the

plaintiff withdrew her complaint at the informal complaint stage and cannot have new life

breathed into it by merely filing in this court.  (Doc. 23).  While the plaintiff did not respond to

this argument, she did state in her amended complaint that this action was filed within 90 days of

the final decision of the EEOC administrative judge.  (First Amended Complaint at ¶ 13).  While

10

this may be true, the appeal to the EEOC was not on the merits of the complaint.  The appeal was merely an effort to have the complaint reinstated so the plaintiff could proceed on the merits. The judge denied this request, and the plaintiff has failed to offer any authority demonstrating that she should be deemed to have properly presented and exhausted her administrative remedies on that claim.  Without more, the plaintiff cannot be permitted to use the denial of permission to reinstate a previously dismissed claim as a basis for asserting that a claim was properly presented and exhausted in the administrative process.  Therefore, summary judgment would also be due to be granted for this reason on the plaintiff's claims arising out of 4-H-350-0060-99.

Case 4-H-350-0032-02 was originally filed with the agency on October 16, 2001. (Attachment 14).  While the plaintiff's amended complaint in this court does not mention this agency complaint by number, several of the acts claimed therein are similar to the acts claimed in this complaint.  (See First Amended Complaint).  Construing the facts in a light most favorable to the plaintiff, and considering that only claims properly exhausted can invoke the jurisdiction of this court, the undersigned finds that the acts enumerated the amended complaint are sufficiently similar to those claimed in 4-H-350-0032-02.

However, case 4-H-350-0032-02 was dismissed by the Postal Service on June 20, 2002. (Attachment 15).  It was thereafter appealed to EEOC's Office of Federal Operations ("OFO"). The OFO rejected the appeal as being untimely.  (Attachment 2).  Accordingly, the defendant asserts that summary judgment is proper on the claims asserted in 4-H-350-0032-02 because failing to file a timely appeal is the same as failing to exhaust all administrative remedies and therefore bars suit in Federal Court.  (Doc. 23).  Because the plaintiff does not dispute that she failed to file a timely notice of appeal to the OFO, and the record supports the defendant's

11

contention, the defendant's motion is due to be granted.  The evidence before this court clearly demonstrates that the plaintiff failed to exhaust her administrative remedies prior to filing with this court.  She cannot invoke the jurisdiction of this court as to these claims.

### Case 4-H-350-0004-02

The plaintiff also asserts a hostile work environment premised on sexual harassment. (First Amended Complaint).  Because 4-H-350-0004-02 was the only properly exhausted claim brought before this court, the court must next consider the allegations contained therein.  The defendant contends that summary judgment is due to be granted on these claims because the plaintiff has failed to establish her sexual harassment claim.  (Doc. 23).

The law is clear, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."  *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998).  To establish a claim for a hostile or abusive working environment, an employee must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment . . . ; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) a basis for holding the employer liable.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076, 121 S. Ct. 772, 148 L. Ed. 2d 671 (2001) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc), *cert. denied*, 529 U.S. 1068, 120 S. Ct. 1674, 146 L. Ed. 2d 483

(2000)).  In *Gupta,* the Eleventh  Circuit stated that "'[t]he fourth element . . . is the element that tests the mettle of most sexual harassment claims.  Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code.'  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)."  *Gupta*, 212 F.3d at 583.  Title VII may include a prohibition of sexual harassment, but it is clearly not a federal civility code.  *Mendoza*, 195 F.3d at 1245.

Title VII "does not prohibit all verbal or physical harassment in the workplace," but rather prohibits only conduct by employees interacting with other employees that would be "severe or pervasive" enough to "alter the conditions of the victim's employment."  *Johnson v. Booker T. Washington Broadcasting Services, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (quoting *Oncale*, 523 U.S. at 80-81).

In *Mendoza*, the Eleventh Circuit, sitting *en banc*, reiterated the standards applicable to hostile environment claims by stating that there were both objective and subjective components of harassing conduct that make it severe or pervasive to alter the conditions of employment. *Mendoza*, 195 F.3d at 1246.  The court explained that the employee must subjectively perceive the harassment as being severe or pervasive, and that perception must be objectively reasonable. *Id.*  When determining the severity of the harassment, the court must  look at the "totality of the circumstances" when viewed from an objective standpoint.  *Id.*

The Supreme Court in *Faragher* stated, "We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment . . . ."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998) (citing *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577-78 (2d Cir. 1989); *Moylan v.*

*Maries County*, 792 F.2d 746, 749-50 (8th Cir. 1986).

In the instant case, the plaintiff alleges that the facts are sufficient to meet the burden described in *Faragher* and *Gupta*. (Doc. 26). She is a member of a protected class. She alleges that she was subject to unwelcome harassment that was based on her sex. She further alleges that the harassment was sufficiently severe and pervasive enough to state a claim. The defendant, however, asserts that the plaintiff cannot establish that the complained-of conduct was neither severe or pervasive. (Doc. 23).

**Not Severe and Pervasive**

The defendant argues that the alleged sexual harassment is not severe or pervasive enough to alter the terms and conditions of the plaintiff's employment. (Doc. 23, pp. 12-16). The law is clear that "[t]he court should examine the conduct in context, not as isolated acts, and determine under the totality of circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Mendoza*, 195 F.3d at 1246.

The plaintiff's remaining claims that may be considered by the court include only four instances of conduct. (First Amended Complaint). The complaints include that Patterson (1) shouted at the plaintiff in a "dehumanizing manner" on August 1, 2001; (2) spoke to the plaintiff in an "elevated voice" on August 8, 2001 (see Attachment 10); (3) failed to intervene when the plaintiff was "assaulted" by Marsh on August 29, 2001 (see Attachment 11); and (4) threatened the plaintiff by stating, "I know what I'm gonna [sic] do for you now. I'm gonna [sic] take care of you" (see Attachment 12, p. 1). In reviewing these claims, the court is cognizant that even though the incidents individually may not constitute a Title VII claim,

14

together they may be significant to overcome the defendant's motion for summary judgment.

A look at *Mendoza* and the litany of case examples discussed therein where courts have found the conduct to be insufficient is appropriate at this juncture. The *Mendoza* court stated the following:

> Other circuits have applied these factors to delineate a minimum level of severity and pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII. Many decisions throughout the circuits have rejected sexual-harassment claims based on conduct that is as serious or more serious than the conduct at issue in this appeal. *Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 872-75 (5th Cir. 1999) (holding that several incidents over a two-year period, including [the] comment "your elbows are the same color as your nipples," another comment that the plaintiff had big thighs, touching plaintiff's arm, and attempts to look down the plaintiff's dress were insufficient to support hostile-environment claim); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264-67 (5th Cir. 1999) (noting it was "dubious" whether several sexually oriented comments and gestures and an implied threat of retaliation for refusing sexual advance would be sufficient to establish a hostile work environment); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (holding that statement that plaintiff had the "sleekest ass" in the office plus single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand" were insufficient to alter the terms or conditions of the plaintiff's employment); *Adusumill v. City of Chicago*, 164 F.3d 353, 357 (7th Cir. 1998) (holding actions insufficient to support hostile environment claim where co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers, or buttocks); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can") *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167-68 (7th Cir. 1996) (holding offensive comments including repeatedly calling the plaintiff a "sick bitch" insufficient under *Harris* because not necessarily gender-related); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753-54 (4th Cir. 1996) (holding evidence that the harasser "bumped into [the plaintiff], positioned a magnifying glass over [the plaintiff's] crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at [a] wedding, and stared at him in the bathroom" insufficient to

establish violation of Title VII); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-24 (6th Cir. 1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a four-month period involved repeated sexual jokes; one occasion of looking plaintiff up and down, smiling and stating, there's "Nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks"; asking plaintiff, "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stating, "Just get the broad to sign it"; telling plaintiff she was "paid great money for a woman"; laughing when plaintiff mentioned the name of Dr. Paul Busam, apparently pronounced as "bosom"); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation); *Kidwai v. McDonald's Corp.*, No. 93-1720, 1994 WL 136971 (4th Cir. 1994) (holding insufficient under *Harris* seven incidents, including one instance in which harasser asked plaintiff whether "she was in bed with someone"); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (holding plaintiff's claims--supervisor repeatedly asked about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and tried to kiss her once at a bar and twice at work--were not sufficient for actionable sexual harassment); *see also DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995) ("A hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace."); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) ("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.").

*Mendoza*, 195 F.3d at 1246-47. The court went on to state the following:

In this appeal, the conduct alleged by Mendoza falls well short of the level of either severe or pervasive conduct sufficient to alter Mendoza's terms or conditions of employment. Construing the evidence in the light most favorable to Mendoza, she presented evidence of four categories of harassing conduct: (1) one instance in which Page said to Mendoza "I'm getting fired up"; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's "constant" following and staring at Mendoza in a "very obvious

16

fashion."

   As an initial matter, whether Page's conduct testified to by Mendoza includes the necessary sexual or other gender-related connotations to be actionable sex discrimination is questionable. . .

*Id*. at 1247.

  In *Gupta*, the complained-of conduct consisted of the following acts over a six to seven month period: (1) "look[ing her] up and down," (2) suggesting lunch at Hooters restaurant, (3) suggesting that she "change into casual attire before dinner," (4) accompanying her and another couple to "a place where single people meet," (5) offering assistance if she needed anything, (6) changing her office to one across from the alleged harasser when she complained her office was too small, (7) offering to drop food at her house, (8) calling her at home two or three times a week late at night and asking if she was in bed, (9) asking if she had a boyfriend, (10) asking her to lunch, (11) calling other faculty members "racist" and "evil," (12) putting a hand on her thigh in the office, (13) touching her bracelet and saying, "Oh, it is a very nice bracelet," (14) touching her ring, (15) touching and lifting the hem of her dress and commenting, "What kind of material is that?," (16) on a hot day when the air conditioning was broken, Gupta walked into the alleged harasser's office when he was expecting her and he had taken off his dress shirt and was wearing an undershirt and "he unbuckled his belt and pulled down his zipper and start[ed] tucking his [dress] shirt in, (17) making comments that she was "looking very beautiful" and that "Indian people are really decent, and the Caribbean and Western people are really promiscuous" and stating that he could tell that she was "innocent and [ ] didn't have much experience," (18) after a storm, commenting that she should have called him since she was alone

17

and he would have spent the night,[7] and (19) other looks that made her uncomfortable.  *Gupta*, 212 F.3d at 578-79.

      After a jury rendered a verdict for the plaintiff, the Eleventh Circuit held that the evidence did not support a finding of harassment from an objective viewpoint.  The court stated that annoying or inappropriate behavior does not always rise to the level of severe or pervasive.  The court went further to state that even conduct that is sexual in nature - if not severe, threatening or humiliating - will likely not rise to the level of severe or pervasive, especially if it is infrequent in nature and not coupled with verbal suggestions or advances.  *Id.*

      In a more recent case, *Johnson v. Booker T. Washington Broadcasting Service, Inc*., 234 F.3d 501 (11th Cir. 2000), the Eleventh Circuit reversed the granting of a motion for summary judgment.  The plaintiff claimed that she was sexually harassed when (1) Donnell repeatedly commented that Johnson had a sexy voice; (2) Donnell called out Johnson's name and winked at her; (3) Donnell called out Johnson's name and pulled his pants up in an obscene manner, revealing an imprint of his private parts; (4) Donnell called out Johnson's name and then looked her "up and down" while staring at her in a sexual manner; (5) Donnell said "Johnson, I like you and as long as I like you you're going to be all right.  You don't have to worry about your job;" (6) Donnell repeatedly attempted to massage Johnson's shoulders against her wishes; (7) Donnell stuck his tongue out at Johnson in an obscene manner; (8) Donnell inappropriately rubbed his body parts against Johnson; (9) Donnell asked Johnson why a person with a body like hers always covered it up; (10) Donnell commented that he could "pull [Johnson] up" anytime, a

---

[7]Gupta understood this as a suggestion "that he wanted to [have a] sexual relationship with [her]."  *Gupta*, 212 F.3d at 579.

comment Johnson interpreted as a sexual reference; (11) Donnell got close to Johnson's face as if to kiss her; (12) Donnell commented that Johnson "really knocked him off his feet;" (13) Donnell stated that "he had to stay on his side of the room;" (14) Donnell commented inappropriately about sex to Johnson and questioned Johnson about her sex life; and (15) Donnell asked Johnson if she ever got lonely.  *Johnson*, 234 F.3d at 506.

   In *Johnson,* the Eleventh Circuit held that there are four objective factors to consider when determining if behavior is harassing: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct was physically threatening and humiliating, and (4) whether the conduct interfered with job performance.  The court found in *Johnson* that the conduct met the four requirements and were in line with the "continuous barrage of sexual harassment" found by the court in *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (11th Cir. 1999).  *Johnson*, 234 F.3d at 506.

   In *Dees*, the conduct consisted of the following:

> sexually explicit stories and jokes, to comments about her body or those of male firefighters, to physical harassment.  On one particularly humiliating occasion, Jacobs asked Dees to sit on his lap.  When she refused, Jacobs picked her up and squeezed her so hard that she urinated in her pants.  Jacobs, laughing, then told the other firefighters what had happened.  On another occasion, Stewart ground his groin into Dees' buttocks after stating "look at that sexy mama, I could just eat you in that skirt."  Rainey propositioned Dees on a number of occasions, whispering in her ear that she was "the kind of woman I like; you're not only beautiful, you're hot-blooded," or telling her that she needed a "sugar daddy" and that with a body like hers, she would not have to work if she listened to him.  On numerous other instances, the four men grabbed or slapped Dees' buttocks, groped her leg, or otherwise touched her in a sexually suggestive manner.

*Dees*, 168 F.3d at 418-19.  The *Dees* court noted in *dicta* that "it is evident both that Dees subjectively found her work environment abusive, and that a reasonable person would find it so."

19

*Id*. at 422 n.12.

The conduct alleged under consolidated case 4-H-350-0004-02 does not fit exactly into any of the parameters of any of the foregoing cases.  The only instance of touching during the relevant period that the court may consider involved the instance when Marsh bumped into the plaintiff's cash drawer which then struck the plaintiff.  There is no allegation of any lewd or explicit actions or speech by the defendant's employees during the pertinent period.[8]  The remaining conduct includes being shouted at and being spoken to at an "elevated level," a supervisor not intervening with regard to the Marsh incident, and being threatened by a supervisor.  This conduct, whether considered separately or in the aggregate, does not rise to the level of offensive conduct described in *Gupta* or *Dees*.  There was no "continuous barrage of sexual harassment" as the court found in *Dees*, nor was there any conduct or statements that would have interfered with a reasonable employee's performance of her job as the court required in *Gupta* and *Johnson*.  Therefore, the defendant's motion for summary judgment as to the allegations presented in 4-H-350-0004-02 is due to be granted.  Simply stated, the evidence before the court does not rise to the level of "severe and pervasive" conduct required for a finding of a hostile or abusive working environment.

Even were this court permitted to consider all the allegations presented by the plaintiff in the various EEO filings (regardless of the exhaustion issues), the defendant would still be entitled to summary judgment because the conduct does not rise to a level of "severe and pervasive."

---

[8]The only instance of such conduct relates to the earlier period when Patterson purportedly made an improper hand gesture.

20

To the extent that the plaintiff advances several claims in her amended complaint that were not incorporated in any agency claim, they are not properly exhausted. These claims include allegations that (1) Robert Reese made daily comments on the plaintiff's appearance, rubbed the plaintiff's back and arms, repeatedly asked the plaintiff about personal relationships, asked the plaintiff on numerous occasions if she was interested in dating married men, constantly stared at the plaintiff in a sexual nature, and did so after he was told to stop and (2) Patterson exposed the plaintiff to sexual gestures. (First Amended Complaint at p. 6).

Taking all of those allegations into consideration, the conduct still is not sufficient to satisfy the severe and pervasive standard. The rubbing of the shoulders and staring at the plaintiff are similar to the conduct in *Mendoza*, which it found to be offensive; however, it did not meet the severe or pervasive standard. Each incident of touching in *Gupta* "was only momentary, and neither was coupled with any verbal suggestions or advances." *Gupta*, 212 F.3d at 585. *Johnson* involved much more significant physical contact. The court described the conduct as "physically threatening and humiliating" and interfering with the plaintiff's ability to work. *Johnson*, 243 F.3d at 509. The conduct in *Dees* was much more severe. It was focused directly at the plaintiff, it was extensive, and it involved physical touching. In the instant case, the allegations of physical touching were momentary, not physically threatening or humiliating, and not in a private area of her body.

Agee's situation is somewhat also similar to the facts in *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993), wherein a supervisor made repetitive inquiries

concerning the plaintiff's personal life.[9]  However, those actions do not meet the high standard of severe or pervasive conduct to support her claim.  The alleged incidents by the plaintiff are inappropriate and offensive, but they do not rise to the actionable level of conduct enunciated by the Eleventh Circuit and the United States Supreme Court to satisfy the severe and pervasive standard.

### Retaliation

The defendant next contends that summary judgment is due to be granted on the retaliation claim because the plaintiff has failed to show that she suffered an adverse employment action.  (Doc. 23).  The plaintiff did not respond to this assertion.  (Doc. 26).  Therefore, before deciding on the defendant's motion on the facts before the court, the court again must first determine whether the plaintiff has abandoned this claim as well.

In her Opposition Brief to the defendant's summary judgment, the plaintiff merely reiterates the sexual harassment claims made in the amended complaint.  She does not even mention the retaliation claim.  There is no response to the defendant's assertion that she did not suffer an adverse employment action.  Because the plaintiff has failed to respond to the defendant's argument, the court deems the plaintiff's claim abandoned in accordance with the previous discussion.  Accordingly, the court finds that the defendant's motion for summary

---

[9]Specifically, the facts were as follows:

> Weiss alleged that Lawrence asked her for dates, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs in her work area and attempted to kiss her in a bar. Lawrence also may have twice attempted to kiss her in the office, though Weiss' deposition testimony is contradictory on this point.

*Weiss*, 990 F.2d at 337.  In affirming the grant of summary judgment, the court stated that ". . . these incidents were also relatively isolated . . . .  Taking all of Weiss' allegations as true, her claim does not meet the standard for actionable sexual harassment."  *Id*.

judgment is due to be granted with regard to the retaliation claim.

Even had the plaintiff not abandoned the foregoing claim, this court would still find that the defendant's motion for summary judgment is due to be granted because she has failed to show that she suffered an adverse employment action.  As stated by the United States Supreme Court:

> Under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."

*Clark County School Dist. v. Breeden*, 532 U.S. 268, 269, 121 S. Ct. 1508, 1509, 109 L. Ed. 2d 509 (2001).

The appropriate framework from which to evaluate the plaintiff's retaliation claim is the familiar *McDonnell Douglas* standard used in disparate treatment cases.  The plaintiff has the initial "burden of establishing a prima facie case."  *McDonnell Douglas,* 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  "If a plaintiff establishes a prima facie case of [retaliation], the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action."  *Chambers v. Walt Disney World, Co.*, 132 F. Supp. 2d 1356, 1365 (M.D. Fla.) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)).  Once a defendant has articulated its legitimate, nondiscriminatory reasons for the plaintiff's termination, the court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were

not what actually motivated its conduct.'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538

(11th Cir.), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997) (citing

*Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).  This must include an

evaluation of "whether the plaintiff has demonstrated 'such weaknesses, implausibilities,

inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable fact finder could find them unworthy of credence.'"  *Combs*, 106 F.3d

at 1538.  If it is "determine[d] that a reasonable jury could conclude that the employer's

articulated reasons were not the real reason for its decision, the court may not preempt the jury's

role of determining whether to draw an inference of intentional discrimination from the

plaintiff's prima facie case taken together with rejection of the employer's explanations for its

action."  (*Id.*).

 To establish a *prima facie* case of retaliation, the plaintiff must prove three elements:

(1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment

action; and (3) that the adverse employment action was causally related to the protected activity.

*Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998), *cert. denied*,

525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

 The only specific complaint of retaliation by the plaintiff was that she "had job duties

taken away and was assigned the most difficult in the facility."  (First Amended Complaint at ¶

44).  The Eleventh Circuit Court of Appeals has determined that a mere change in work

responsibilities does not rise to an adverse employment action.  *Gupta*, 212 F.3d at 587-89

(inability to work desired assignments, hours or locations, do not constitute an adverse

employment action); *Benefield v. Fulton County*, 2005 U.S. App. LEXIS 7669, Docket No.

04-12313 (11th Cir. 2005) (lateral transfer to fire station, removal of her duties as EMS Coordinator, failure to provide her light duty were not adverse employment actions).

In this case, the plaintiff engaged in protected activity by filing her complaints with the agency, and did have a change in duties, but the plaintiff has failed to provide any evidence that this was an adverse employment action.  Therefore, in the absence of any evidence to the contrary, the court finds that the defendant's motion for summary judgment is proper and due to be granted on the retaliation claim.[10]

## CONCLUSION

Based on the foregoing, the court finds that the defendant's motion for summary judgment is due to be granted in its entirety and the plaintiff's complaint is due to be dismissed with prejudice.  An appropriate order will be entered contemporaneously herewith.

**DONE**, this the 22nd day of March, 2006.

_John E. Ott_

**JOHN E. OTT**
United States Magistrate Judge

---

[10]The court is cognizant that the plaintiff is no longer working with the defendant after having received worker's compensation.  However, there is nothing to indicate that her situation is the result of any adverse employment action.  To the contrary, such is not alleged in her complaint.

25